UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAFAEL LINARES,

        Petitioner,

                                                           Case Number 17-11085
v.                                                           Honorable David M. Lawson

WARDEN J.A. TERRIS,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Rafael Linares presently is serving a federal sentence at the Federal Correctional Institution in Milan, Michigan for a drug crime violation. He believes that his custodial sentence is being extended improperly because certain good time credit has been taken from him as a penalty for violating certain prison rules. Linares contends in a petition for a writ of habeas corpus, filed under 28 U.S.C. § 2241, that irregularities in two disciplinary proceedings violated his constitutional rights and a program statement issued by the Federal Bureau of Prisons. Because the Court does not see it that way, the petition will be denied.

I.

Linares was convicted in the United States District Court for the Southern District of Texas of conspiracy to possess with intent to distribute 1,000 or more kilograms of marijuana. On January 23, 2014, the trial court sentenced him to seventy months in prison followed by three years of supervised release. The United States Court of Appeals for the Fifth Circuit dismissed Linares's appeal because there were no non-frivolous issues for appellate review. *See United States v. Linares*, 582 F. App'x 482 (5th Cir. 2014).

On May 4, 2015, while Linares was incarcerated at a federal facility in Wisconsin, another inmate allegedly used a cellular ("cell") phone to take pictures of Linares. Linares subsequently was transferred to a federal prison camp in Illinois. Prison officials then discovered the pictures of Linares on the other inmate's cell phone. On August 9, 2015, a federal official charged the petitioner in an incident report with violating Code 108 (aiding possession of a hazardous tool). With an apparent typographical gaff, the report stated that, "[a]lthough inmate Linares was in possession, he posed for the photographs indicating knowledge of the cellular phone." On August 11, 2015, a prison official served the petitioner with the incident report.

On August 20, 2015, the incident report was amended to read: "Although inmate Linares was *not* in possession, he posed for the photographs indicating knowledge of the cellular phone." (Emphasis added.). A prison official delivered the amended incident report to Linares on August 20, 2015, and on August 21, 2015, the unit disciplinary committee ("UDC") discussed the charge with him and referred the matter to the disciplinary hearing officer ("DHO").

In September of 2015, the incident report had to be regenerated and the matter re-investigated because prison officials misplaced the initial incident report. Following the re-investigation, a second UDC hearing was held on September 25, 2015, and the matter was again referred to the DHO for imposition of sanctions. The matter was re-investigated another time, and on October 13, 2015, a third hearing was held before the UDC. The UDC referred the matter to the DHO who held a hearing on the charge on October 26, 2015. On October 29, 2015, the DHO issued a report stating that Linares was guilty of aiding possession of a hazardous tool. As a result, the petitioner lost forty-one days of good conduct time and ninety days of phone, commissary, and visiting privileges. On November 6, 2015, the DHO's report was delivered to the petitioner.

Meanwhile, on August 14, 2015, Linares was charged in an unrelated incident with violating Code 305: "possession of anything not authorized." The charge arose from a correctional official's search of the petitioner and discovery of eight hand-rolled tobacco cigarettes in the petitioner's pants pocket. On August 15, 2015, the incident report was delivered to Linares.

On August 20, 2015, the incident report was amended to charge Linares with violating Code 331: possession of non-hazardous contraband (tobacco); and on August 21, 2015, the amended report was delivered to him. At a hearing before the UDC on August 21, 2015, Linares admitted that he was guilty of the charge, and the matter was referred to the DHO. At the DHO's hearing on September 9, 2015, Linares again admitted that he was guilty, and the DHO found him guilty as charged. Linares lost fourteen days of good conduct time and thirty days of commissary and telephone privileges as a result of his misconduct. On September 20, 2015, the DHO's report was delivered to Linares.

In 2016, Linares was transferred to FCI-Milan, and on October 6, 2016, he filed a *pro se* habeas corpus petition challenging both the disciplinary proceedings. The Court dismissed the petition without prejudice when the petitioner failed to comply with a court order to pay the filing fee or to apply for leave to proceed *in forma pauperis*. *See Linares v. Terris,* No. 16-13576 (E.D. Mich. Nov. 15, 2016) [dkt. #6]. After the petitioner discovered that his case had been dismissed, he submitted the $5.00 filing fee and moved to re-open the 2016 case on the ground that he had not received the Court's deficiency order. Instead of re-opening the case, the Court ordered the Clerk of Court to open a new habeas case and to apply the funds received from the petitioner to the new case. The Court ordered the petitioner to file a new petition for a writ of habeas corpus under the new docket number.

Linares complied. His latest petition alleges that the disciplinary proceedings were procedurally defective, and he did not receive due process, because (1) the incident reports were not issued in a timely manner, (2) the UDC's reviews were untimely, (3) correctional officer Bates performed three different roles in the disciplinary process (which included investigation and adjudication), and (4) he is innocent of one of the misconduct charges. Linares asks the Court to order restoration of forty-one days of forfeited good conduct time. The government argues in its answer that the Court should dismiss the petition because Linares failed to exhaust administrative remedies for his claims and, even if the exhaustion requirement is excused, the petitioner's right to due process was not violated during the disciplinary proceedings.

II.

Federal prisoners ordinarily must exhaust administrative remedies for their claims before filing a section 2241 habeas corpus petition. *Luedtke v. Berkebile*, 704 F.3d 465, 466 (6th Cir. 2013) (citing *Fazzini v. Northeast Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006)). The Federal Bureau of Prisons has an administrative-remedy program that "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her confinement." 28 C.F.R. § 542.10(a). The exhaustion requirement generally is "required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975).

Section "2241's exhaustion requirement is not statutorily required," however, and "a prisoner's failure to exhaust available state or administrative remedies may be excused where

pursuing such remedies would be futile," or where the remedy would not "afford the petitioner the relief he seeks." *Fazzini*, 473 F.3d at 235-36. Although Linares attempted to pursue administrative remedies for his claims, all of his administrative appeals were rejected for procedural reasons. *See* Response to Pet. for Writ of Habeas Corpus at 10 [dkt. #7]. It would be futile for him to pursue administrative remedies at this time, because several of Linares's administrative appeals were rejected as untimely back in 2015 and 2016. The Court will address the merits of the petitioner's claims.

### III.

A petitioner is entitled to habeas relief only if he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Under the Administrative Procedures Act, on the other hand, a court may "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

The focus here is on two prison disciplinary proceedings and the loss of good conduct time. A prison inmate "may not be deprived of life, liberty, or property without due process of law," but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The minimum requirements of procedural due process in prison disciplinary matters are (1) written notice of the charge at least twenty-four hours before the disciplinary hearing, (2) an opportunity to call witnesses and to present documentary evidence at the hearing when doing so will not be unduly hazardous, and (3) a written statement by the factfinder of the evidence relied on and

the reasons for the disciplinary action taken. *Id*. at 564-66. With these requirements in mind, the Court proceeds to address the petitioner's specific concerns.

A.

Linares alleges first that timely incident reports were not issued in his disciplinary proceedings. His actual claim appears to be that he was not given a copy of the incident reports within twenty-four hours of the reports being issued.

Although 28 C.F.R. § 541.5(a) states that an inmate "will ordinarily receive the incident report within 24 hours of staff becoming aware of [the inmate's] involvement in the incident," this is not a procedural due process requirement under *Wolff*. Instead, the Supreme Court held in *Wolff* that an inmate must be given notice of misconduct charges *at least* twenty-four hours before a hearing on the charges. *See Wolff*, 418 U.S. at 564. By establishing a floor and not a ceiling, the Court sought to ensure that the prisoner had enough time to prepare for the hearing.

The cell-phone incident in this case occurred on May 4, 2015, but prison officials apparently did not become aware of the incident until August 9, 2015. Linares was then charged with aiding the possession of a cell phone, and a prison official delivered the initial incident report to the petitioner about forty-eight hours later on August 11, 2015. *See* Response to Pet., Govt. Ex. 3. The report apparently was amended on August 20, 2015, to show that Linares was *not* in possession of the cell phone, and the amended report was delivered to him on the same day. *See id*., Govt. Ex. 5. Linares appeared before the UDC on August 21, 2015. The matter was then re-investigated, and the DHO conducted the disciplinary hearing on October 26, 2015.

The only delay under 28 C.F.R. § 541.5(a) occurred when the initial incident report was delivered to the petitioner approximately forty-eight hours, rather than twenty-four hours, after

prison officials became aware of the alleged misconduct. But the DHO's hearing was held over two months later. Because Linares had ample time to prepare a defense to the cell-phone charge, his right to due process was not violated.

In the other disciplinary matter (possession of rolled cigarettes), Linares initially was charged with possessing something unauthorized on August 14, 2015, and the incident report was delivered to him on August 15, 2015. Response to Pet. for Writ of Habeas Corpus, Govt. Ex. 12 at 1. The charge was amended to possession of a non-hazardous item on August 20, 2015, and the amended incident report was delivered to Linares on August 21, 2015. *Id*. at 2. The UDC hearing also was held on August 21, 2015, but Linares admitted his guilt at that hearing and at the subsequent DHO hearing on September 9, 2015. Even if Linares did not have twenty-four hours notice of the amended charge in the tobacco case, the error was harmless. In fact, Linares appears to be waiving any challenge to a finding of guilt in that disciplinary matter. *See* Reply in Support of Writ of Habeas Corpus at 2 (noting that he pleaded guilty to violating Code 305 and that he is not appealing that finding at this time).

The petitioner has no right to relief on the basis of his first claim.

B.

Linares alleges next that the UDC reviews were untimely because they did not commence within five days of the incident reports. The Supreme Court did not address the timeliness of disciplinary committee reviews in *Wolff,* but 28 C.F.R. § 541.7(c) states that "[t]he UDC will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays."

In the tobacco case, the charge was issued, promptly investigated, and resolved in approximately five weeks. And Linares admitted guilt in that matter, so even if there was a delay in the investigation, he suffered no prejudice from the delay.

The cell-phone matter is more troubling because prison officials initially charged Linares on August 9, 2015, and the matter was not resolved until October 26, 2015. Linares, moreover, asserts that he was confined to a special housing unit until the disciplinary matter was resolved.

Part of the delay was due to having to re-investigate the matter after the initial incident report was lost. But a correctional official requested, and was given, an extension of time to continue the investigation, and this is documented in the record. *See* Response to Pet. for Writ of Habeas Corpus, Ex. 6. Although Linares contends that the warden did not approve the extension of time, the warden apparently delegated his responsibility for approving the extension to another prison official. *See id.* That was proper under the BOP's Program Statement 1120.18.6(c) ("In most situations, Wardens request and receive prior regional approval before taking leave. When the Warden is absent, an Associate Warden, or Superintendent of Industries, shall be designated as Acting Warden.").

And the language of 28 C.F.R. § 541.7(c) — that the UDC "ordinarily" will complete its review within five days — suggests that the five-day period for conducting an investigation on an incident report is an aspirational, not a mandatory, requirement. In addition, courts have consistently found that a UDC's delay in reviewing an incident report does not violate a federal prisoner's right to due process. *Whyte v. Snyder-Norris*, No. 0:16-CV-1-HRW, 2016 WL 4069874, at *5 (E.D. Ky. July 28, 2016) (unpublished), *aff'd*, No. 16-6379, 2017 WL 4071133 (6th Cir. June 27, 2017); *Henson v. Longley*, No. 3:13-CV-830-DCB-MTP, 2015 WL 5604273, at *3 (S.D. Miss. Sept. 23, 2015) (unpublished) (collecting cases).

-8-

Here, Linares's right to due process was not violated by any delay in the investigation of his incident reports. Habeas relief is not warranted on his claim.

C.

Linares next alleges that correctional officer Bates performed three different roles in the disciplinary process: camp manager, the UDC representative, and the DHO in his disciplinary matters. Because Bates was both an investigator and an adjudicator, Linares questions her impartiality, at least in a structural way.

An impartial decision-maker is a fundamental requirement of due process in a prison disciplinary proceeding. *Wolff*, 418 U.S. at 592 (Marshall, J., concurring in part and dissenting in part). That is confirmed by the federal regulations, which require the DHO to "be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident." 28 C.F.R. § 541.8(b).

Here, in the cell-phone matter, A. Strutz was the reporting employee and K. Bell and Officer Bates were the UDC on the initial incident report. *See* Response to Pet. for Writ of Habeas Corpus, Govt. Ex. 3. However, the incident report was amended, and on the amended report, A. Strutz was the reporting employee, K. Bell was the only UDC member, and G. Crews was the DHO. *See id.*, Govt. Exs. 5, and 9. The only role that Officer Bates played in the amended report was requesting an extension of time to investigate the case, *id.*, Govt. Ex. 6, and providing Linares with a notice of his rights at the DHO hearing, *id.*, Govt. Ex. 7.

In the tobacco disciplinary case, W. Hook was the reporting officer, K. Bell was the UDC, and Officer Bates was the DHO. *Id.*, Govt. Ex. 12 at 1-2, 7. Bates did not play multiple roles in that disciplinary matter, and even though she was involved in the disciplinary proceeding about aiding

possession of a cell phone, her involvement was not significant. Therefore, Linares was not deprived of an impartial hearing officer in either disciplinary matter, and he is not entitled to relief on this claim.

D.

In his fourth and final claim, Linares contends that he is innocent of aiding the possession of a cell phone. The requirements of due process are satisfied if "some evidence" supports a decision to revoke good time credits. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). Because this standard "is minimal," *Byers v. Zickefoose*, No. 13-306, 2015 WL 1275922, at *4 (W.D. Pa. Mar. 19, 2015) (unpublished), "[n]ot much evidence is required to support the action of a prison disciplinary board." *Williams v. Bass*, 63 F.3d 483, 485 (6th Cir. 1995). The relevant question is whether there is any evidence in the record to support the disciplinary committee's conclusion. *Hill*, 472 U.S. at 455-56. A reviewing court is not required to weigh the evidence or to make an independent assessment of the credibility of witnesses. *Id*. at 455. And the Court will not second-guess prison authorities' discretion "to define offenses under their internal rules and to assign offenses in particular cases." *Falkiewicz v. Grayson*, 271 F. Supp. 2d 942, 948 (E.D. Mich. 2003) (citing *Turney v. Scroggy*, 831 F.2d 135, 139-40 (6th Cir. 1987)). In assessing whether "some evidence" supports the outcome, inferences may be drawn, and "the evidence need not logically preclude any conclusion but the one reached by the hearing officer." *Ibid.*

Linares was charged with violating BOP Code 108, which is "Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade, body armor, maps, handmade rope,

or other escape paraphernalia, portable telephone, pager, or other electronic device." 28 C.F.R. § 541.3 (Table 1). Cell phones are considered "'hazardous tools' because they [can] be used to facilitate escape or to engage in other illegal activities, and thus represent 'a threat to the security and orderly running of the institution.'" *Materon v. Ebbert*, 446 F. App'x 405, 407 (3d Cir. 2011). Moreover, "portable telephone[s]" are mentioned specifically in the regulation.

The more difficult question is whether Linares aided another inmate in possessing the phone in question. The DHO relied in part on two photographs of Linares found on another inmate's phone. In both pictures, Linares appears to be posing for the person taking the pictures. *See* Response to Pet. for Writ of Habeas Corpus, Govt., Ex. 11 at 3. The DHO concluded from the photos that Linares obviously was aware of the cell phone and, therefore, he aided another person in possessing the phone. Linares offered the following explanation for the pictures:

> There is a guy named Chino who was getting out. We were showing him tips how to pick up girls. I was not posing for the camera but rather showing him how to stand and act. Those pictures were taken without my consent or permission. I never saw him take them.

Response to Pet. for Writ of Habeas Corpus, Govt. Ex. 9 at 1.

The DHO was not persuaded by Linares's explanation of the pictures and concluded from the evidence that he either allowed the other inmate to take pictures of him or requested that the inmate take the pictures. That was a reasonable conclusion because Linares acknowledged that it was him in the pictures, and he appears to be looking directly at the person taking the pictures and intentionally posing for the pictures.

The DHO's conclusion that the petitioner aided in the *possession* of the cell phone is based on the thinnest of inferential reeds. Although Linares apparently did not actually own, possess, or use the phone to make a call, apparently the DHO concluded from Linares's photos on the phone

-11-

that he aided possession of the phone so that the photo session could take place. That inference could be supported by the fact that Linares did not report the phone to prison officials after he became aware that another inmate had possession of it. *See Pina v. Tamez,* No. 4:10-CV-934-Y, 2011 WL 13180182, at *2 (N.D. Tex. June 9, 2011), *report and recommendation adopted*, No. 4:10-CV-934-Y, 2011 WL 13177715 (N.D. Tex. July 7, 2011), *aff'd*, 470 F. App'x 298 (5th Cir. 2012).

Furthermore, according to the DHO, Linares initially had no defense to the charge, and he began to profess his innocence only after the disciplinary process was delayed. In short, the DHO was not convinced of Linares's innocence. Linares cannot avoid the conclusion that "some evidence" supports the charge, although not much. But the DHO's decision is entitled to deference. *Cook v. Warden, Fort Dix Corr. Inst.*, 241 F. App'x 828, 829 (3d Cir. 2007) (citing *Hill*, 472 U.S. at 455-56). Because "this is not a case where the record is devoid of *any* evidence to support the DHO's decision . . . , this court is not free to retry the disciplinary charge and substitute its opinion for that of the DHO." *Flannagan v. Tamez*, 368 F. App'x 586, 588 (5th Cir. 2010) (emphasis added).

There was "some evidence" to support the DHO's finding of guilt. Linares's challenge to the DHO's finding lacks merit, and he is not entitled to relief on the basis of this claim.

IV.

Petitioner Rafael Linares has not shown that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Nor are the challenged decisions arbitrary, capricious, or an abuse of discretion under 5 U.S.C. § 706(2)(A). His loss of disciplinary credits must stand.

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus [dkt. #3] is **DENIED**.

It is further **ORDERED** that, if the petitioner appeals this decision, he may proceed *in forma pauperis*. He is not required to move for a certificate of appealability because the statute governing certificates of appealability "does not require a certificate of appealability for appeals from denials of relief in cases properly brought under § 2241, where detention is pursuant to federal process." *Witham v. United States*, 355 F.3d 501, 504 (6th Cir. 2004).

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: April 9, 2018

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 9, 2018.

s/Susan Pinkowski
SUSAN PINKOWSKI